UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

MEHRDAD HOSSEINI,                )
                                 )
    Plaintiff,                   ) Civil Action No. 5: 13-82-JMH
                                 )
v.                               )
                                 )
JANET NAPOLITANO, et al.,        )     **MEMORANDUM OPINION**
                                 )            **AND ORDER**
    Defendants.                  )

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the motion of the defendants, Acting Secretary of the Department of Homeland Security ("DHS") Rand Beers, Director of United States Citizenship and Immigration Services ("USCIS") Alejandro Mayorkas, and Director of the USCIS Nebraska Service Center Mark J. Hazuda, to dismiss the complaint, or in the alternative for summary judgment [R. 14], as well as plaintiff Mehrdad Hosseini's cross-motion for summary judgment. [R. 21] Both parties have filed responses in opposition. [R. 20, 22] These matters are therefore ripe for decision.

**I**

Mehrdad Hosseini is a resident of Lexington, Kentucky. Proceeding without counsel, on March 26, 2013, Hosseini filed a complaint seeking declaratory and injunctive relief compelling the defendants to adjudicate the Form I-485 Application to

1

Register Permanent Residence or Adjust Status he filed on April 19, 2001. [R. 1] In his complaint, Hosseini contends that the 12-year delay in deciding his application is unreasonable. Specifically, he indicates that the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, requires federal agencies to decide matters before them within a reasonable time, 5 U.S.C. § 555(b), and allows a court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). [R. 1, p. 1] He further contends that pertinent provisions of the Immigration and Nationality Act provide that I-485 applications "should be completed no later than 180 days after the initial filing of the application," 8 U.S.C. § 1571(b), and seeks mandamus relief under 28 U.S.C. § 1361 to compel USCIS to decide his application.

In their motion, the defendants indicate that Hosseini is a native and citizen of Iran. On May 6, 1999, Hosseini's wife Nasrin Abdolrahmani was granted asylum in the United States. Abdolrahmani filed an I-730 petition seeking asylum on Hosseini's behalf as her spouse. USCIS approved that application, and on February 5, 2000, Hosseini was admitted as a derivative asylee. [R. 14-1, Canaan Decl. at ¶ 3]

An asylee who has been physically present in the United States for at least one year and is otherwise admissible is eligible for permanent resident status. 8 U.S.C. § 1159(b). On

2

April 19, 2001, Hosseini filed an I-485 application seeking adjustment of his status to that of a lawful permanent resident. The USCIS Nebraska Service Center made an initial request for evidence on July 14, 2005, and a second request on December 3, 2007. Hosseini's application has remained pending since his February 22, 2008, response. *Id*. at ¶ 5.

If an applicant's status is adjusted to that of lawful permanent resident, they are issued a "green card." *Id*. However, an asylee may not be issued a green card if they face a statutory bar to adjustment of status under 8 U.S.C. § 1182. The defendants indicate that their failure to decide Hosseini's application is not due to general administrative delay, but because he faces such a statutory bar to adjustment. *Id*. at ¶ 11.

Specifically, Hosseini's file indicates that while he was a teenager living in Iran, he distributed literature provided by Mojahedin-e-Khalq (the "MEK") and the Fadaian-e-Khalq (the "FEK"). Before the Shah was deposed in Iran's 1979 revolution, MEK members killed United States soldiers and American civilian defense contractors. After the revolution, MEK's Islamist and Marxist ideology conflicted with that of the Ayatollah Khomeini's government, and a series of bombings, mortar attacks and assassinations directed against the Khomeini regime are attributed to the group. For its part, FEK operated a training

camp and guerilla base in Tehran University and "engaged in small scale, insurgent-style attacks in urban settings" against the regime. In her I-730 petition, Abdolrahmani stated that she insisted that Hosseini terminate his involvement with these organizations in 1984 as a precondition to their marriage. *Id*. at ¶¶12-15.

USCIS has concluded that MEK and FEK engaged in "terrorist activity" within the meaning of 8 U.S.C. § 1182(a)(3)(B)(iii)(V)(b) by "[using] any ... explosive, firearm, or other weapon or dangerous device (other than for mere personal monetary gain), with intent to endanger, directly or indirectly, the safety of one or more individuals or to cause substantial damage to property." Accordingly, it has determined that MEK and FEK constitute undesignated (or "Tier III") terrorist organizations pursuant to 8 U.S.C. § 1182(a)(3)(B)(vi)(III). *Id*. at ¶16. USCIS has further concluded that Hosseini "engage[d] in terrorist activity" within the meaning of 8 U.S.C. § 1182(a)(3)(B)(iv) because his distribution of literature constituted "afford[ing] material support" to a terrorist organization under subsection (VI) of that section, thus rendering him inadmissible pursuant to 8 U.S.C. § 1182(a)(3)(B)(i)(I). *Id*. at ¶ 17.[1]

---

[1] In their Memorandum, Defendants assert that if compelled to adjudicate Hosseini's application for adjustment, USCIS would

4

Nonetheless, the defendants indicate that rather than simply denying Hosseini's application outright because he is inadmissible, pursuant to agency policy USCIS has placed his application, and many others by applicants similarly situated, on adjudicatory hold. [R. 14-1, Canaan Decl. at ¶¶ 21-23] The purpose for doing so is to permit the DHS Secretary to exercise his discretionary authority under 8 U.S.C. § 1182(d)(3)(B)(i), created as a result of congressional amendments in December 2007, to exempt organizations from being considered Tier III terrorist organizations or to exempt applicants from the subsection (a)(3)(B) inadmissibility bars. [R. 14, p. 9-10]

The defendants further indicate that USCIS is at present actively considering whether FEK may be exempted pursuant to the Secretary's August 10, 2012, exercise of her discretionary authority. However, USCIS has already determined that MEK does not qualify for the exemption. [R. 14-1, Canaan Decl. at ¶¶ 27-29] Should USCIS deny Hosseini's application on inadmissibility

---

likely find him inadmissible not only for "material support" to a terrorist organization for distributing literature, but also under 8 U.S.C. § 1182(a)(3)(B)(i)(VIII) for receiving "military-type training" from a terrorist organization, and for "engag[ing] in terrorist activity" under 8 U.S.C. § 1182(a)(3)(B)(i)(I) by using any "explosive, firearm, or other weapon or dangerous device (other than for mere personal monetary gain)" under 8 U.S.C. § 1182(a)(3)(B)(iii)(V). [R. 14, p. 3] However, the defendants have not placed any information into the record which provides a factual basis to support the relevance or application of either of these alternative grounds for inadmissibility.

grounds, it would not prejudice his right to re-file his application at a later date. *Id*. at ¶ 30.

## II

The defendants present three arguments in support of their motion to dismiss the complaint. First, they contend that the Court must dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) because 8 U.S.C. § 1252(a)(2)(B)(ii) deprives the Court of subject matter jurisdiction over Hosseini's claims. [R. 14, pp. 11-13] Second, they argue that their placement of his application on adjudicatory hold was a discretionary choice which is not addressable by mandamus, and that Hosseini has not shown any prejudice resulting from USCIS's failure to decide his application as required to obtain relief under the APA. [R. 14, pp. 14-16] Third, they defendants assert that they are entitled to summary judgment on Hosseini's APA claim because they have not unreasonably delayed in deciding his I-485 application for more than twelve years. [R. 14, pp. 16-24] For his part, Hosseini addresses the defendants' jurisdictional arguments in his response [R. 20, pp. 2-4], and counters that he is entitled to summary judgment because the delay in adjudicating his I-485 application is unreasonable as a matter of law. [R. 21, pp. 2-3]

Since the 2007 congressional amendments and USCIS's decision to place I-485 applications potentially subject to a

subsection (a)(3)(B) inadmissibility bar on adjudicatory hold, USCIS has faced numerous lawsuits filed by applicants similarly situated to Hosseini. In response, USCIS has presented the same or similar set of arguments to district courts throughout the country, with divergent results. The Court has canvassed that authority, and finds that the decisions concluding that USCIS's positions are unsustainable are better reasoned, and that Hosseini is therefore entitled to relief.

**A**

The defendants first argue that 8 U.S.C. § 1252(a)(2)(B)(ii) deprives the Court of subject matter jurisdiction over Hosseini's claims because "[t]he pace of USCIS's decisions over how and when to proceed with adjudicating asylee adjustment of status applications is discretionary" for purposes of that section. 8 U.S.C. § 1252(a)(2)(B)(ii) divests federal courts of jurisdiction to review any "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is *specified* under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." (emphasis added). Because 8 U.S.C. § 1159(b) does not expressly state a specific time frame within which USCIS must adjudicate applications for adjustment, defendants contend that it is a matter of discretion, and thus unreviewable in this Court. [R. 14, p. 11-13]

Some courts have accepted USCIS's argument, concluding that § 1159(b)'s grant of discretion to the Secretary to determine whether to substantively grant or deny a I-485 application impliedly grants discretion to determine the pace at which applications are decided, including a decision not to decide the application at all. *Cf. Seydi v. U.S. Citizenship and Immigration Services*, 779 F. Supp. 2d 714, 718 (E.D. Mich. 2011) (*citing Singh v. Napolitano*, 710 F. Supp. 2d 123, 130-31 (D.D.C. 2010)); *Alghadbawi v. Napolitano*, No. 1:10-cv-1330-TWP, 2011 WL 4390084 (S.D. Ind. Sept. 19, 2011). Others have rejected it, concluding that because the INA does not *specify* that USCIS has discretion whether or not to issue a substantive decision on an I-485 application, it does not fall within § 1252(a)(2)(B)(ii)'s jurisdictional divestiture for USCIS decisions "the authority for which is *specified* under this subchapter to be in the discretion" of the Secretary. *Cf. Liu v. Novak*, 509 F. Supp. 2d 1, 6-7 (D.D.C. 2007); *Al Rifahe v. Mayorkas*, 776 F. Supp. 2d 927, 932 (D. Minn. 2011); *Singh v. Napolitano*, 909 F. Supp. 2d 1164, 1169-70 (E.D. Cal. Nov. 13, 2012); *Labaneya v. U.S. Citizenship and Immigration Services*, No. 12-cv-15506, 2013 WL 4582203 (E.D. Mich. Aug. 29, 2013). To date, no court of appeals has decided the question, *Geneme v. Holder*, 935 F. Supp. 2d 184, 189 (D.D.C. 2013), although the Eighth Circuit appears to have assumed subject matter

8

jurisdiction to entertain such claims was present. *Debba v. Heinauer*, 366 F. App'x 696, 699 (8th Cir. 2010).

Having reviewed these authorities, the Court concludes that because the INA does not include a statutory grant of discretion to the Secretary to decline to adjudicate I-485 applications, the divestment of jurisdiction contained in § 1252(a)(2)(B)(ii) does not apply to bar a challenge like Hosseini's to USCIS's failure to decide his I-485 application for over 12 years. *Liu*, 509 F. Supp. 2d at 7 ("Section 1252(a)(2)(B)(ii) does not apply to all discretionary decisions, but only to the narrow[ ] category of decisions where Congress has taken the additional step to specify that the sole authority for the action is in the [Secretary's] discretion.") (internal quotation marks omitted). In these cases, none of the plaintiffs is seeking to compel the Secretary to exercise his unfettered discretion "to determine whether (and how) to issue a waiver of inadmissibility" under § 1182(d)(3)(B)(i). Instead, they seek to compel USCIS to decide their I-485 applications under § 1159(b) one way or another. If the applicant faces an inadmissibility bar under § 1182(a)(3)(B), the USCIS must simply determine the applicability of that bar as part of its decision on the application. Applicants like Hosseini are challenging USCIS's affirmative decision to place their application in "adjudicative hold," an administrative limbo of potentially infinite duration.

There is no provision which grants USCIS "authority for" its decision to place an application on adjudicative hold which is "specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." As the District of Minnesota aptly stated:

> The discretionary authority to withhold indefinitely the adjudication of an I-485 application is not specified in the INA. To the contrary, "nothing in the INA addresses, much less specifies, any discretion associated with the pace of adjudication." *Chen v. Heinauer*, No. C07-103RSL, 2007 WL 1468789, at *3 (W.D. Wash. May 18, 2007); *see also Tang v. Chertoff*, 493 F. Supp. 2d 148, 153-54 (D. Mass. 2007) ("Despite the care taken in the INA to specify the **substance** of an adjustment of status decision as discretionary, the **pacing** of such a decision is not so specified.") (emphasis in original). Accordingly, "[w]hile the ultimate decision to grant or deny an application for adjustment of status is unquestionably discretionary, there exists a non-discretionary duty to act on and process the application." *Dong v. Chertoff*, 513 F. Supp. 2d 1158, 1165 (N.D. Cal. 2007). As discussed below, the Administrative Procedures Act ("APA") states that agencies "**within a reasonable time ... shall proceed to conclude a matter presented to it. ...**" 5 U.S.C. § 555(b) (emphasis added); *see also Yu v. Brown*, 36 F. Supp. 2d 922, 931 (D.N.M. 1999) ("All other courts addressing this question have held that INS has a non-discretionary duty to process applications for LPR status as well as all other immigration applications.").

*Al Rahife*, 776 F. Supp. 2d at 932-33. *See also Geneme*, 935 F. Supp. 2d at 191 (collecting cases); *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 689 (9th Cir. 2003) ("The language of § 1252(a)(2)(B)(ii) .... refers not to 'discretionary

decisions,' ... but to acts the *authority* for which is *specified* under the INA to be discretionary.").

This conclusion is also consistent with the Supreme Court's decision in *Kucana v. Holder*, 558 U.S. 233 (2010). In *Kucana*, the Supreme Court determined that § 1252(a)(2)(B)(ii), the same jurisdiction-stripping provision at issue here, did not deprive federal courts of jurisdiction to review orders by the Board of Immigration Appeals denying motions to reopen removal proceedings. In doing so, it noted that this provision is not implicated unless the grant of discretionary authority to the Secretary is expressly found in the statute itself. *Id*. at 245-46. The Court further noted that the types of decisions insulated from judicial review are "substantive decisions ...involv[ing] whether aliens can stay in the country or not", whereas adjunct determinations which "do[] not direct the Executive to afford the alien substantive relief" are not. *Kucana*, 558 U.S. at 247-49. The Court therefore concludes that it possesses subject matter jurisdiction over Hosseini's claims.

**B**

Second, the defendants make a passing argument that their placement of his application on adjudicatory hold was a discretionary choice which is not addressable by mandamus, and that Hosseini has actually benefitted from placing his application on adjudicative hold, and he therefore cannot show

prejudice resulting from USCIS's failure to decide his application as required to obtain relief under the APA. [R. 14, pp. 14-16]

As to the first argument, defendants incorrectly suggest that mandamus relief is limited to cases of administrative inaction. It is not. Mandamus relief is appropriate where the official has failed to satisfy a non-discretionary duty, which may occur either through inaction or through action taken not in conformity with the duty. *Cf. Labaneya*, 2013 WL 4582203, at *3. Here, there is no question that USCIS has a nondiscretionary duty to act upon a properly-filed I-485 application. 5 U.S.C. § 555(b); *Dong v. Chertoff*, 513 F. Supp. 2d 1158, 1165-67 (N.D. Cal. 2007); *Yu v. Brown*, 36 F. Supp. 2d 922, 931 (D.N.M. 1999). Mandamus is therefore an appropriate remedy if the relevant criteria are met.

As to the second argument, defendants point to no benefit, tangible or intangible, that Hosseini enjoys as a result of the indefinite hiatus in the determination of his I-485 application. Nor do the defendants indicate that Hosseini would suffer any adverse consequences should his application be denied. To the contrary, they indicate that if his application is denied, it would be without prejudice to his right to immediately file a renewed application. [R. 14-1, p. 16; Canaan Decl. at ¶ 30] Finally, while the defendants indicate that his application

would "likely" be denied pursuant to one of the statutory bars to adjustment of status found in § 1182(a)(3)(B), there is at least some possibility that USCIS would conclude that Hosseini, as a teenager, did not "afford material support" to a terrorist organization within the meaning of § 1182(a)(3)(B)(iv) merely by distributing literature provided by MEK and FEK. Hosseini has demonstrated sufficient prejudice flowing from USCIS's refusal to decide his I-485 for more than a decade to state a claim under the APA. *Geneme*, 935 F. Supp. 2d at 193.

C

Third, the defendants contend that Hosseini's APA claim fails because the 12-year delay in deciding his I-485 application is not unreasonable as a matter of law. [R. 14, pp. 16-24] The Administrative Procedure Act requires "each agency [to] proceed to conclude a matter presented to it ... within a reasonable time." 5 U.S.C. § 555(b). It further authorizes a reviewing court to "compel agency action" that is "unlawfully withheld" or "unreasonably delayed." 5 U.S.C. § 706(1).

As a threshold matter, the defendants urge the Court to analyze Hosseini's APA claim under the "unreasonably delayed" prong under § 706(1). Hosseini, and a number of those courts reaching the merits of an APA claim, have accepted that invitation. [R. 20, pp. 12-14]; *Geneme*, 935 F. Supp. 2d at 192-95; *Islam*, 2014 WL 985545, at *4-7. However, defendants

acknowledge that all of the procedural prerequisites to making a substantive determination on his application, such as background and security checks, have been completed, and that further action on Hosseini's application has not been delayed, but rather USCIS has affirmatively withheld making any decision since 2008 pursuant to internal policy memoranda requiring such cases to be placed on "adjudicatory hold." [R. 14, pp. 2-3, 9-11] It is therefore reasonable to question whether Hosseini's APA claim ought not be analyzed to determine whether USCIS has "improperly withheld" agency action, in derogation of its nondiscretionary obligation to adjudicate I-485 applications, as a disjunctive ground for relief under the APA. *Cf. Beshir v. Holder*, 853 F. Supp. 2d 1, 10-11 (D.D.C. 2011); *Oregon Natural Desert Ass'n v. U.S. Forest Service*, 312 F. Supp. 2d 1337 (D. Or. 2004). However, because the parties have instead proceeded to analyze whether the application of USCIS's adjudicatory hold effected an "unreasonable delay" in the determination of Hosseini's application, the Court will adopt that mode of analysis.

To determine whether an agency's delay in taking required action is unreasonable, courts apply the six-factor test articulated by the District of Columbia Circuit in *Telecomms. Research & Action v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("TRAC"). These include:

(1) the time agencies take to make decisions must be governed by a rule of reason;

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id*. at 80; *see Ahmed v. Holder*, No. 1:13-CV-271, 2013 WL 4544436, at *5 (N.D. Ohio Aug. 27, 2013).

Under the first and second factors, absent a defined timetable for agency action, courts focus, in part, on the reasonableness of the delay, *Geneme*, 935 F. Supp. 2d at 193, giving due consideration to the complexities added by the implication of terrorism-related grounds for inadmissibility. *Islam*, 2014 WL 985545, at *5. Even accounting for that complexity, courts have found delays of four years or less to be reasonable, but that delays of six years or more are unreasonable. *Id*. (collecting cases). USCIS's process for considering exemptions for terrorism-related grounds for

15

inadmissibility is not a basis for altering this analysis. *Geneme* at 193. Here, USCIS has possessed information relating to Hosseini's involvement with MEK and FEK since his wife's application for derivative asylum was filed in 2000, and readily acknowledges that the sole basis for its failure to decide his application is unrelated to his application itself but the separate process of evaluating exemptions for the organizations with which he associated 30 years ago. The Court has little difficulty concluding that these factors strongly support a determination that USCIS's 12-year delay in deciding Hosseini's I-485 application is manifestly unreasonable. *Cf. Al Karim v. Holder*, No. 08-cv-671-REB, 2010 WL 1254840, at *3-4 (D. Colo. Mar. 29, 2010); *Kashkool v. Chertoff*, 553 F. Supp. 2d 1131, 1143-44 (D. Ariz. 2008); *Han Cao v. Upchurch*, 496 F. Supp. 2d 569, 577 (E.D. Pa. 2007).

In light of the impediments to travel and adverse impacts to his employment described by Hosseini in his complaint, the third factor (which prioritizes the need for prompt administrative action when matters of health and human welfare are in issue) likewise suggests that USCIS's delay is unreasonable. *Kashkool*, 553 F. Supp. 2d at 1145. Similarly, the fifth factor (which accounts for prejudice resulting from the delay) supports the same conclusion, as any delay in obtaining lawful permanent residence status results in a

commensurate delay before full citizenship may be sought. 8 U.S.C. § 1427(a) (lawful permanent resident must reside continuously in the United States for five years before filing an application for naturalization); *Al Karim*, 2010 WL 1254840, at *4.

The fourth factor requires the Court to assess any adverse impact an order compelling USCIS to adjudicate Hosseini's I-485 application would have upon competing priorities for the agency's time and energy. *Geneme*, 935 F. Supp. 2d at 194. The Court does not lightly intrude upon agency prerogatives in balancing such competing demands, but that reluctance must give way in the face of a clear need to require agency action required by law but unsatisfied for over a decade. Further, given that the defendants indicate that Hosseini appears to face an inadmissibility bar, the intrusion appears to be slight, requiring only their determination whether his actions constituted "affording material support" within the meaning of 8 U.S.C. § 1182(a)(3)(B)(iv). And, as other courts have noted, requiring adjudication of Hosseini's I-485 application does not require USCIS, having already determined not to exempt MEK from the terrorism-related inadmissibility bars, to make the same unquestionably-involved but legally independent decision whether to exempt FEK pursuant to 8 U.S.C. § 1182(d)(3)(B)(i). *Al-Rifahe*, 776 F. Supp. 2d at 937 ("Defendants provide no reason

why plaintiff's application cannot be adjudicated immediately, subject to future re-opening and review when and if USCIS policies regarding [the Oromo Liberation Front] change."); *Geneme*, 935 F. Supp. 2d at 194. As for the sixth factor, there is no evidence suggesting that USCIS acted with impropriety in delaying a decision on Hosseini's application, but no such finding is required to find that its delay was nonetheless unreasonable under the APA. *Al-Rifahe* at 937 n.7; Kashkool, 553 F. Supp. 2d at 1145.

Having considered all of the *TRAC* factors, the Court reaches the almost inevitable conclusion that the 12-year delay in deciding Hosseini's I-485 application is "unreasonably delayed" within the meaning of 5 U.S.C. § 706(1) as a matter of law. The Court will therefore deny the defendants' motion to dismiss and for summary judgment, and will grant the plaintiff's motion for summary judgment.

Accordingly, **IT IS ORDERED** that:

1. The defendants' Motion to Dismiss the Complaint, or in the Alternative for Summary Judgment [R. 14] is **DENIED.**

2. Hosseini's Motion for Summary Judgment [R. 21] is **GRANTED.**

3. The defendants are **ORDERED** to adjudicate Hosseini's I-485 application forthwith, but in no event more than sixty (60) days after the entry of this Order.

This the 3rd day of April, 2014.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge